IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Ricky G. Holloway, | ) | |
| | ) | Civil Action No. 8:10-1357-JFA-JDA |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying his claim for disability insurance benefits ("DIB"). For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

Plaintiff filed a claim for DIB on March 28, 2007 [R. 97], alleging disability as of October 31, 2006 [R.28].[2] The claim was initially denied on April 30, 2007 [R. 58] and was

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Plaintiff initially alleged a disability onset date of August 18, 2006 but later amended the onset date to October 31, 2006. [R. 9.]

denied on reconsideration by the Social Security Administration ("the Administration") on August 3, 2007 [R.74].   A timely request for hearing was made, and on May 11, 2009, Administrative Law Judge ("ALJ") Theresa R. Jenkins held a hearing on Plaintiff's claim. [R. 18–48.]

On September 2, 2009, the ALJ issued her decision that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act").   [R. 6–17.] Following her review of the evidence, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments listed in 20 C.F.R. §§ 404.1525, 404.1526.  [R. 12, Finding 4.]  The ALJ also found that Plaintiff retained the residual functional capacity to perform light work [R. 13, Finding 5] and that Plaintiff was limited to simple instructions and routine tasks due to his chronic pain [R. 13, Finding 5].  With these restrictions, the ALJ found that Plaintiff was unable to perform any past relevant work [R. 15, Finding 6], but jobs existed in significant numbers in the national economy that Plaintiff could perform [R. 16, Finding 10].

On March 27, 2010, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the hearing decision.  [R. 1–5; 20 C.F.R. § 404.981.]  Plaintiff filed this action for judicial review on May 26, 2010.

The only issues before the Court are whether the Commissioner applied proper legal standards and whether substantial evidence supports the final decision of the Commissioner.

## THE PARTIES' POSITIONS

2

Plaintiff contends that the Commissioner applied an incorrect legal standard by (1) failing to assign proper weight to the records and opinions of Plaintiff's treating physician; (2) failing to discuss or consider the reasons for Plaintiff's limited treatment as required by Social Security Ruling ("SSR") 96-7p; and (3) by dismissing Plaintiff's testimony without sufficient justification or explanation and failing to make a proper credibility determination as required by SSR 96-7p.  [Doc. 5.]  Plaintiff also contends that the Commissioner's conclusions regarding Plaintiff's residual functional capacities are not supported by substantial evidence where they are inconsistent with the opinion evidence of the treating physician, Dr. Nowatka.  [*Id*.]

The Commissioner contends that the ALJ reasonably discounted Plaintiff's subjective statements regarding extreme limitations in functioning where Plaintiff's allegations were inconsistent with the objective medical evidence and Plaintiff infrequently sought treatment for his back impairments although free medical treatment was available. The Commissioner also contends that the ALJ's decision reasonably discounted Dr. Nowatka's opinion where Dr. Nowatka's opinion was not supported by his treatment notes or the medical record as a whole.  [Doc. 6.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear

4

disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g., Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor

5

the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The Secretary and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan* v. Sullivan, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions.

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F.Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

See, e.g., *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents claimant from performing past relevant work; and (5) the impairment prevents claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he

8

is generally presumed to be able to engage in substantial gainful activity.  20 C.F.R. §§ 404.1574, 404.1575.

> **B.** *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").

> **C.** *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

9

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. § 404.1520(f); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional

---

[4]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a (2001); *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the Secretary to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

11

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.     Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See  Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(e).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v.*

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 Fed. Appx. 716, 723 (4th Cir. 2005). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig,* 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id*.

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*,

14

829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition. *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR 88-13 ), Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

15

SSR 90-1p, *superseded by* SSR 96-7p ("If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."); *see* 20 C.F.R. § 416.929(c)(1)–(c)(2).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Plaintiff's Medical History**

On August 18, 2006, Plaintiff was reportedly injured on the job while lifting a 350-pound object. [R. 218.] He reported lower back pain that radiated into his left hip. [R. 207, 218, 288.] An MRI of his lower back suggested degenerative arthritis, no cord

16

compression, and a broad-based disc bulge at the T12-L1 vertebrae. [R. 218.] He returned to work on light-duty status. [R. 288.]

During a September 2006 examination, Robert A. Ringel, M.D., observed that Plaintiff was alert, oriented, and appropriate, with diminished light touch sensation over his left thigh, but normal concentration, memory, and speech; intact cranial nerve exam, cerebellar exams, and motor exams; intact reflexes; and a normal gait. [R. 218–19.] Dr. Ringel hypothesized that Plaintiff might have a radiculopathy that had not appeared on the MRI, or sciatica (pain radiating along the sciatic nerve, which runs from the spinal cord to the hip and down each leg) with lower back pain. [*Id.*] However, nerve conduction studies and an electromyography (EMG) were within normal limits, with evidence of a peripheral neuropathy or lumbosacral radiculopathy. [R. 217, 221.]

Dr. Ringel administered a left sciatic nerve block.  [R. 220.]  In October 2006, Plaintiff reported left hip pain, but denied progressive weakness, sensory loss, or other abnormalities. [R. 223.]  On examination, he had an intact cranial nerve exam, cerebellar exams, and motor exams; intact reflexes; and a normal gait.  [*Id.*]  Dr. Ringel administered another left sciatic nerve block. [R. 222.]

Later that month, Plaintiff saw Chris Nowatka, M.D., for an initial evaluation. [R. 255.]  Dr. Nowatka became his primary treating physician.  [Doc. 5 at 5.]  Plaintiff told Dr. Nowatka that epidural injections "help for a couple weeks" that Plaintiff kept having pain.  [R. 255.]  On examination, Plaintiff was in no acute distress, with tenderness to palpation of the upper lumbar spine, but negative straight leg raise tests.    [*Id.*]  Dr. Nowatka assessed him with lumbar pain, prescribed pain medication (Lyrica) and steroid medication (Prednisone), and limited Plaintiff to light duty work.  [*Id.*]  Later that week, Plaintiff returned

17

to Dr. Nowatka, who determined that Plaintiff "may be slightly improved" with medication. [R. 254.] Plaintiff reported that his employer did not have any more light duty work for him. [*Id.*] Dr. Nowatka noted, "no prolonged standing," "no lift[ing] > 15 lbs," and "no bending." [*Id.*]

The following week, Plaintiff returned to Dr. Nowatka and reported pain radiating from his lower back into both legs. [R. 253.] On examination, he reported increased pain with straight leg raise tests and had some tenderness to palpation of his back but was in no acute distress. [*Id.*] Dr. Nowatka noted that he did not have a copy of Plaintiff's MRI. [*Id.*] Dr. Nowatka adjusted Plaintiff's medication. [*Id.*] Plaintiff asserts he was completely unable to work after approximately October 31, 2006 (his amended alleged onset date). [R. 28.]

Plaintiff participated in physical therapy at Proaxis/Pivital Therapy for his back during January 2007. [R. 230–42.] He completed the five physical therapy sessions approved by his insurance. At the end of the fifth session, his backward bending was graded at hypomobile, erector spine tests produced pain and wincing, and his lumbosacral range of motion was decreased by 25%, except for left rotation, which was decreased by 95%. [R. 230.]

In late January 2007, Plaintiff returned to Dr. Nowatka, who noted that Plaintiff's condition was unchanged. [R. 252.] Plaintiff estimated that he could stand for 30 minutes at a time, sit for 45 minutes at a time, bend and lift about 5 pounds, and lift 15 pounds from a seated and supported position. [*Id.*] Plaintiff denied numbness in his legs. [*Id.*] On examination, he had tenderness to palpation of his back and reported pain with lateral

18

rotation, but was in no acute distress.  [*Id.*]  Dr. Nowatka noted that Plaintiff would continue physical therapy [*Id.*]; however, the record does not reflect any additional physical therapy sessions.  Plaintiff claims that he was not able to receive medication for his back pain due to his loss of insurance and income.  [R. 28.]  While a community health clinic offered Plaintiff treatment for some of his medical conditions [R. 29], Plaintiff did not have access to free or low-cost medication for chronic back pain per the clinic's policy.  [R. 192.]

In August 2007, Dr. Nowatka completed a form regarding Plaintiff's condition and abilities. [R. 290–92.] Dr. Nowatka stated that, to his knowledge, Plaintiff had not received a diagnosis which would explain his reported back symptoms. [R. 290.] The doctor opined that Plaintiff could frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds; sit for 30 minutes at a time for a total of three hours in an eight-hour workday; stand for 30 minutes at a time for a total of one hour in an eight-hour workday; occasionally push/pull up to 20 pounds, climb stairs, and perform overhead work; and never work on ladders or scaffolding.  [*Id.*]  Dr. Nowatka also opined that Plaintiff would need a sit/stand option which permitted him to change position at his discretion, and the option to take unscheduled rest breaks at his discretion. [R. 291.]  He opined that Plaintiff's symptoms would "markedly" interfere with his ability to concentrate and complete tasks and estimated that Plaintiff would miss three or four days of work per month due to his back symptoms. [*Id.*]  When asked whether Plaintiff was "disabled from working," the doctor stated that, based on Plaintiff's self report, Plaintiff was unable to perform his "current job."  [R. 292.]

During the administrative proceedings, state agency doctors Dale Van Slooten, M.D., and Carl E. Anderson, M.D., reviewed the record and opined that Plaintiff retained

19

the residual functional capacity to perform medium work.  [R. 58, 60, 260–67, 271–78.]
However, the state agency never ordered a consultative evaluation.  [Doc. 5 at 6.]

**Weight Assigned to Treating Physician's Opinion**

Plaintiff complains that the weight assigned by the ALJ to Plaintiff's treating
physician's records and opinions  is not supported by substantial evidence and applies an
incorrect legal standard.  The court  agrees.

In this case, the ALJ discounted the treating physician's opinion as not supported
by evidence because "[h]is progress notes generally contained the claimant's complaints
and prescriptions and no objective findings. . . . Rather, it appears Dr.Nowatka relied more
on the claimants allegations."  [R. 14.]  Accordingly, the ALJ gave Dr. Nowatka's opinion
"little weight" and gave the state's non-examining physicians' opinions "some weight."  [R.
15.]  Although the ALJ may discount a treating physician's opinion if it is unsupported or
inconsistent with other evidence, the ALJ must still weigh the medical opinion based on the
factors listed in 20 C.F.R. § 404.1527(d).  Here, the ALJ failed to provide any discussion
of how she weighed the factors, nor did she specifically explain or identify the "persuasive
contradictory evidence" of record, *see Coffman*, 829 F.2d at 517, that formed the basis for
her giving Dr. Nowatka's opinion little weight.  In fact, though not specifically stated, it
seems the ALJ afforded the state's non-examining physicians' opinions more weight than
Plaintiff's treating physician.  [R. 15 (affording the treating physician's opinion only "little
weight" but the non-examining physicians's opinions "some weight").]  As stated above, a
determination coming down on the side of a non-examining physician's opinion can stand
only if the medical testimony of examining and treating physicians goes both ways.  *Smith*,
795 F.2d at 346.  The ALJ failed to properly explain her reasoning for assigning weight

20

between the physicians as she did and failed to point to specific evidence contradicting the treating physician's opinion. Accordingly, the ALJ's assignment of weight is inconsistent with the requirements articulated in *Coffman*, 829 F.2d at 517, *Smith*, 795 F.2d at 346, and the Social Security regulations.

**Limited Treatment**

Plaintiff complains that the ALJ applied an incorrect legal standard by failing to discuss or consider reasons for limited treatment. [Doc. 5 at 9.] Plaintiff cites to the ALJ's decision where she noted, "[p]articularly troublesome is the lack of objective findings or medical records to support the claimant's subjective complaints." [R. 15.] While the ALJ failed to directly identify the reason for the lack of objective findings or medical records, this failure is not a basis for reversing the ALJ's decision because the ALJ does not appear to have considered the level and type of treatment Plaintiff sought when making a determination as to Plaintiff's credibility. Instead, the ALJ appears to have merely noted the lack of medical records.

**Credibility Determination**

Plaintiff complains that the ALJ did not comply with SSR 96-7p in dismissing the Plaintiff's testimony without sufficient justification or explanation and failing to make proper credibility determination. The court agrees.

The ALJ failed to satisfactorily explain the basis on which she refused to accord any weight to Plaintiff's testimony regarding his limited daily activity. While the ALJ is required to make credibility determinations about allegations of pain or other nonexertional disabilities, "such decisions must *refer specifically to the evidence informing the ALJ's*

*conclusions*." *Hammond*, 765 F.2d at 426 (emphasis added). In this case, the ALJ discredited Plaintiff's testimony regarding his limited daily activities as not being objectively verified with any reasonable degree of certainty [R. 13] and found it difficult to attribute the degree of limitation to claimant's medical condition *as opposed to other reasons*, in view of relatively weak medical evidence and other factors [R. 14]. A review of the decision, however, fails to provide the court with any guidance as to (1) why Plaintiff's testimony regarding his limited daily activities was found *not* credible (as opposed to merely noting that it would be difficult to objectively verify) and (2) what other reasons or factors lead to the ALJ's decision to dismiss Plaintiff's testimony regarding his limitations in daily activity. The conclusion by the ALJ, without more, fails to comply with the specificity requirements of SSR 96-7p and *Hammond*, 765 F.2d at 426. *See Makinson v. Asture*, 586 F. Supp. 2d 491, 496 (D.S.C. 2008) (awarding attorney's fees and discussing court's final order which found that the ALJ did not perform a sufficient credibility determination when the ALJ did not set forth any specific reasons for finding Plaintiff's allegations not totally credible).

**Residual Functional Capacity Finding Inconsistent with Treating Physician's Opinion**

Plaintiff complains that the Commissioner's conclusions regarding Plaintiff's residual functional capacities are not supported by substantial evidence where they are inconsistent with the opinion evidence of the treating physician, Dr. Nowatka, and Plaintiff's own unimpeached testimony. The court agrees.

As stated above, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work, considering the claimant's residual functional capacities, age, education, and

past work experience.  Here, the Court has found that the ALJ failed to explain why she assigned little weight to the treating physician's opinion and why she discredited Plaintiff's testimony.  Taking away the treating physician's opinion and Plaintiff's own testimony, the ALJ was left with very little evidence on which to make a determination regarding Plaintiff's residual functional capacity.  In fact, the ALJ noted on multiple occasions in her decision that there were limited medical records.  Having found that the ALJ did not properly explain her decision to assign little weight to the treating physician's opinion and that the ALJ did not properly explain why she discredited Plaintiff's testimony, the Court is unable to find that substantial evidence supports the ALJ's decision regarding Plaintiff's residual functional capacity.  *See Richardson*, 402 U.S. at 401 (stating that substantial evidence is more than a scintilla).

## CONCLUSION

The ALJ's decision to disregard the treating physician's opinion is contrary to law because the ALJ failed to identify persuasive contradictory evidence and did not refer to nor discuss the factors provided in 20 C.F.R. § 404.1527(d) of the regulations. Additionally, the ALJ's determination with regard to Plaintiff's credibility fails to comport with the specificity requirements of SSR 96-7.  The ALJ's failure to adequately explain the basis for her findings thus compels the Court to conclude that her decision to deny benefits to Plaintiff was not supported by substantial evidence.

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

March 30, 2011
Greenville, South Carolina